BUTLER, District Judge.
The action is in trespass, and it may be conceded that to sustain it the plaintiff must show a case which would justify a recovery in trover and conversion. On closing his testimony the defendants moved for and the court granted a nonsuit. That the plaintiff’s statement of claims filed sets out a good cause of action in trover is admitted. In the defendants’ brief it is said:
“Plaintiff’s counsel fully recognizing the impossibility of bringing the cause of action in the case within any of the various subdivisions of trespass on the case ex delicto except trover, carefully framed their affidavit to hold to bail and their statement of claim so as to make a good cause of action in trover, and succeeded so well that the defendants having taken a rule to discharge on common bail, AGHESON, circuit judge, upon the argument of the rule, said: ‘The allegations of fact contained in the plaintiff’s affidavit and in his statenwnt *501 of claim are to be taken as true, and giving due effect to them, we cannot say that a prima facie case of trover and conversion is not thereby disclosed.’ Had the proof come up to the allegations the plaintiff would not have been obliged to bring his case to this court.”
T]ie oral admission made on the argument, was even more emphatic. The statement of claim is as follows:
“The plaintiff, Joseph K. Chew, a citizen of the state of New Jersey, residing in Salem, claim of the defendants, Henry S. Louehheim and Frederick Leser, citizens of the state of Pennsylvania, residing in Philadelphia, the sum of ten thousand dollars as damages upon the following cause of.action:
“For that in February, A. D. 1892, and for a long time before and thereafter, the said Henry S. Louehheim and Frederick Leser were co-partners as bankers and brokers, under the name of Henry S. Louehheim & Company. That during the said month of February, A. D. 1892, said Joseph K. Chew procured the said Henry S. Louehheim and Frederick Leser to purchase for him for the purpose of investment a $1,000 bond of the Poughkeepsie Bridge Company for the sum of $652.50, for which the said Joseph K. Chew paid in full and which said bond, under a scheme of reorganization, was thereafter duly changed- into 4 per cent, bonds of the Philadelphia, Reading, & New England Railroad Company to the amount of $750 and Class B income bonds of the Philadelphia, Reading & New England Railroad Company to the amount of $370. That during the month of December, A. D. 1892,- the said Henry S. Louehheim and Frederick Leser purchased for investment for and on behalf of the said Joseph I-C. Chew, three certificates representing respectively 38, 5 and 7 shares of the capital stock of the Bergner & Engel Brewing Company for the sum of $4,642.26. The said Joseph K. Chew then and there paid to the said Henry S. Louehheim and Frederick Leser for and on account of the same, the sum of $2,800 in cash and borrowed from the said Henry S. Louchheim and Frederick Leser at 6 per cent, interest per annum, the balance of $1,842.26, then due upon said certificates of stock, which said loan the said Henry S. Louehheim and Frederick Leser then applied to the payment of the said balance due. On January 18,1893, said Joseph K. Chew paid to Henry S. Louehheim and Frederick Leser the sum of $700, with direction to purchase 4 per cent, and Class B income bonds of the Philadelphia, Reading & New England Railroad Company of the par value of $880 and to apply any balance remaining after said purchase toward payment of his said loan. On January 25, 1893, said Henry S. Louehheim and Frederick Leser purchased for investment for and on behalf of the said Joseph K. Chew 4 per cent, bonds of the Philadelphia, Reading & New England Railroad Company to the amount of $250 par value for the sum of $190.63 and Class B income bonds of the Philadelphia, Reading & New England Railroad Company to the amount of $630 par value, for the sum of $228.38. On March 15, 1893, the said Joseph K. Chew paid to the said Henry S. Louehheim and Frederick Leser the sum of $950, leaving a balance due them of $611.39, which by sundry payments and the collection and credits of dividends on the stock of the Bergner & Engel Brewing Company was reduced in the month of March, 1894, to the sum of $140.36. The said Henry S. Louehheim and Frederick Leser then and there having in their possession certificates representing 50 shares of the capital stock of the Bergner & Engel Brewing Company of the par value of $100 eaéh and of the value of $5,000, and 4 per cent, bonds of the Philadelphia, Reading & .New England Railroad Company in the sum of $1,000 and of the value of $1,000, and Class B income bonds of the Philadelphia, Reading & New England Railroad Company in the sum of $1,000 of the value of $400 as herein-before set out (the said certificates and bonds having been in the possession of the said Henry S. Louehheim and Frederick Leser a more particular description cannot be set out), which said bonds and certificates of stock were then and there left in the custody of the said Henry S. Louehheim and Frederick Leser for safe keeping. And the said Joseph K. Chew avers that although he duly demanded the said certificates and bonds and tendered the balance then due to the said Henry S. Louehheim and Frederick Leser, heretofore, to wit: in March. A. D. 1894, the said Henry S. Louehheim and Frederick Leser in *502 violation of law, rehypothecated said certificates, stock and bonds and caused the same to be sold and disposed of to satisfy certain indebtedness then due and owing by them, the said Henry S. Louchheim and Frederick Leser, and therein and thereby embezzled and converted to their own use said certificates, stock and bonds to the damage of said Joseph K. Ohew $10,000.”
The substance of the statement is that the defendants bought for the plaintiff certain bonds of the Philadelphia, Reading & New England Railroad Company (describing them with as much particularity as the circumstances allow) and 50 shares of stock in the Bergner & Engel Brewing Company, for which they took and held certificates; that the plaintiff furnished means, in advance, to pay a large part of the price, and subsequently paid nearly all the balance; that the object of the purchase was not speculation but investment; and that it was stipulated that the defendants should not part with or encumber the property, but safely hold it for the plaintiff, until the balance of purchase money should be paid; that the plaintiff subsequently tendered the balance and demanded possession of the property which demand was refused; and that the defendants wrongfully converted the property to their own use.
Were these allegations supported by the evidence—that is, might the jury have found them to be so supported? The motion for non-suit was based on the assertion that there is no evidence of the purchase of certain, identified, bonds for the plaintiff, nor that certificates of stock were procured and held for him, as the statement alleges; and furthermore that if this were otherwise the plaintiff could not recover because he was not entitled to possession of the property at the time of the alleged conversion. The testimony describes the bonds witli as much particularity as the circumstances allow, and as much as the statement does; and shows the defendants’ admission that they had bought and were holding them for the plaintiff. As respects the stock certificates we think the evidence would have justified a finding that the defendants had procured and held them as claimed. It shows the defendants’ written reports that they had purchased the stock; their repeated declarations that they had it, and were holding it for the plaintiff; that they had received dividends on it for him, and further that they had received several payments on account of the balance due for it. In the common course of dealing, certificates accompany the purchase of stock; they are the usual, if not the only evidence of purchase, transfer and title. It would seem clear therefore that the plaintiff was fully justified in understanding from the defendants’ reports and declarations that they had, and were holding the stock for him, and that the jury would have been justified in finding this to be true. How could they have the stock, without having the certificates? What right had they to payments on account if they had not the certificates? Had the jury found, as it might, that the reports and declarations were virtual representations that the certificates had been procured and were held for the plaintiff, and that payments on account were thus obtained, it should have found the defendants to be estopped from denying the truth of the representations.
*503 The conversion is clearly shown. Was the plaintiff entitled to possession of the property when it occurred? It is unimportant whether this event be referred to the date of the defendants’ assignment for the benefit of their creditors, or to an earlier period when they pledged it for their own benefit. We are not called upon to consider whether this disposition of the property would have been justifiable in the absence of a stipulation that they should not part with it; with the stipulation it was clearly wrongful. The relation of the parties was that of bailor and bailee. The property was the plaintiff’s, and the obligations of the defendants were the same as they would have been if he had delivered it to them to hold for the balance of purchase money. The defendants’ transfer of it, whether for the payment of their debts, by the assignment, or previously to secure money borrowed, was a fraudulent conversion, which instantly terminated the contract of bailment, and vested the right of possession in the plaintiff. The right accrued, therefore, simultaneously, at least, with the act of conversion. Indeed it may justly be said that the entrance upon this fraudulent act vested him with the right. It was held in abeyance by the contract alone, and when that was terminated it no longer availed them for any purpose. In Berge & Co. v. Foster, 42 Leg. Int. 313, the syllabus which accurately states the decision is as follows: “Where oil held as collateral security, is sold without the owner’s consent, before the debt matures, trover may be sustained.” Reynolds v. Cridge, 131 Pa. St. 189 [18 Atl. 1010] decides the point in the same way. It is unimportant that the question was not discussed in either case. The defendant in each appears to have conceded the point. Brisben v. Wilson, 60 Pa. St. 452, is substantially in point. See, also, Cooley, Torts, 449, 450; 2 Hill. Torts (3d Ed.) 100-102; 2 Am. & Eng. Enc. Law, 58, 59; 2 Am. & Eng. Enc. Law, 741-743, 784, 785, and footnotes to the several pages.
The effect of the plaintiff’s tender, and demand of his property, shortly before suing, need not be considered. One of the defendants only being present at the time, it would not affect the other so as to justify this suit against him. Whether it would justify the suit against the one of whom the demand was made, under the circumstances shown, may be open to doubt.
These questions were sprung upon the able trial judge under circumstances which afforded no opportunity for examination or reflection, and it is not surprising therefore that his first impression should have been such as he adopted.
The judgment must however be reversed.